UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



Roxana Alfaro-Flecha,

           Plaintiff,

—v—

ORC International, Inc.,

           Defendant.

15-cv-1402 (AJN)

MEMORANDUM &
ORDER

ALISON J. NATHAN, District Judge:

    Plaintiff Roxana Alfaro-Flecha brings this suit against her former employer, ORC International, Inc. ("ORC), alleging that she was unlawfully discriminated against on the basis of her age, race, and national origin. ORC moved to dismiss, arguing that Alfaro-Flecha's complaint fails to state a claim upon which relief can be granted. For the reasons that follow, ORC's motion to dismiss is GRANTED in part and DENIED in part.

## I. BACKGROUND[1]

    Alfaro-Flecha began working for ORC, a global market research agency, on January 18, 2012. Compl., Dkt. No. 1, ¶¶ 2-3. She was 55 years old at the time. *Id.* ¶ 7. ORC hired Alfaro-Flecha as its "US Controller," and she retained that title until she was discharged in November of 2013. *Id.* ¶ 3. Alfaro-Flecha generally performed her job well, and she received positive reviews following her first year of employment with ORC. *Id.* ¶ 5.

---

[1] For the purposes of this motion, the Court accepts as true the factual allegations contained in Alfaro-Flecha's complaint and the Charge of Discrimination she filed with the Equal Employment Opportunity Commission. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110–11 (2d Cir. 2010); *see also Holowecki v. Fed. Exp. Corp.*, 440 F.3d 558, 565-66 (2d Cir. 2006), *aff'd*, 552 U.S. 389 (2008) (noting that "it is proper for this court to consider the plaintiff[']s relevant filings with the EEOC," even if those filings are not attached to the complaint, in evaluating defendant's motion to dismiss).

For some or all of her time at ORC, Alfaro-Flecha's direct supervisor was Stacy Lee. *Id.* ¶ 9. According to Alfaro-Flecha, Ms. Lee was "of Chinese (Taiwanese)" descent. *Id.* Ms. Lee allegedly "show[ed] favoritism to others of Chinese descent," and exhibited hostility towards those with different ancestry, including Alfaro-Flecha. *Id.* Specifically, Alfaro-Flecha claims that Ms. Lee gave numerous assignments that should have been hers to subordinates with "inferior experience, skills, and management style." *Id.* ¶ 10. Additionally, Ms. Lee allegedly hired an independent contractor of Chinese origin to perform tasks that should have been assigned to the Controller. *Id.* Finally, Alfaro-Flecha claims that Ms. Lee "eliminated communications to Plaintiff regarding both the budgeting process and the accounting system implementation," relying instead on "less-experienced individuals of Chinese origin." *Id.*

ORC terminated Alfaro-Flecha's employment on November 8, 2013, allegedly as part of a "Reduction Plan." *Id.* ¶¶ 5-6. Included with the letter informing her of her termination was a list of the ages of the employees who were being let go under the Reduction Plan and a list of the ages of the employees who were being retained. *Id.* ¶ 6. Those lists indicated that younger employees were terminated at a rate that was allegedly far less than the rate at which older employees were terminated. *Id.* Alfaro-Flecha claims that the "attitude and corporate culture" at ORC had become "conspicuously 'anti-age.'" *Id.* ¶ 8. She further alleges that, at some point prior to her termination, ORC's Head of Human Resources had said that "[i]f we do not get the number of employees we are hoping would agree to the early retirement plan, then they could face possible termination." *Id.* ¶ 13.

On January 15, 2014, Alfaro-Flecha filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging unlawful discrimination on the basis of race, age, and national origin, as well as retaliation. *Id.* ¶ 3; *see also* Nuccio Decl., Dkt. No. 7, Ex. A ("Charge of Discrim." and "Charge Aff.").[2] On December 5, 2014, the EEOC issued Alfaro-Flecha a "right to sue" letter. Compl. ¶ 3. Alfaro-Flecha then commenced this suit on

---

[2] In Alfaro-Flecha's Charge of Discrimination, she also checked a box indicating that she was discriminated against on the basis of "other." She has not pursued such a claim before this Court.

2

February 25, 2015, alleging violations of federal and state anti-discrimination law. On May 4, 2015, ORC moved to dismiss all the claims in Alfaro-Flecha's complaint under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. No. 5.

## II. LEGAL STANDARD

In evaluating a motion to dismiss, the Court must "accept as true all facts alleged in the complaint" and should "draw all reasonable inferences in favor of the plaintiff." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). The Court should not, however, "accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If a complaint "pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Alfaro-Flecha's employment discrimination claims arise under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967 (ADEA), and the New Jersey Law Against Discrimination ("LAD").[3] Under Title VII, it is "an unlawful

---

[3] In her claims for relief, Alfaro-Flecha explicitly alleges only violations of Title VII and the New Jersey LAD. *See* Compl. ¶¶ 19-32. Title VII, however, does not provide federal protection against discrimination on the basis of age; the ADEA does. *Compare* 42 U.S.C. § 2000e-2(a) (prohibiting employers from discriminating on the basis of an "individual's race, color, religion, sex, or national origin"), *with* 29 U.S.C. § 623(a) (prohibiting employers from taking discriminatory actions against an individual "because of such individual's age"); *see also Thorpe v. Piedmont Airlines, Inc.*, 926 F. Supp. 2d 453, 460 (N.D.N.Y. 2013) ("[A]ge discrimination claims cannot be brought under Title VII."). In the "Jurisdiction and Venue" section of the complaint, however, Alfaro-Flecha notes that "[t]his action arises under . . . 29 U.S.C. § 621 *et seq*," i.e., the ADEA. Compl. ¶ 1. And in both her

3

employment practice for an employer" to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate" against an employee, "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). The ADEA prohibits employers from discharging or otherwise discriminating against an employee "because of such individual's age." 29 U.S.C. § 623(a). And the New Jersey LAD makes it "an unlawful employment practice" for an employer to "to refuse to hire or employ or to bar or to discharge or require to retire" any individual because of her "race, creed, color, national origin, ancestry, [or] age." N.J. Stat. Ann. § 10:5-12 (West).

Courts analyzing claims of disparate treatment under all three statutes apply the familiar *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) (outlining framework in Title VII case); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (applying *McDonnell Douglas* framework to ADEA age discrimination claim); *Mogull v. CB Commercial Real Estate Grp., Inc.*, 744 A.2d 1186, 1193 (N.J. 2000) (noting that the "Court has applied the [*McDonnell Douglas*] test to claims brought under [the] LAD since *Peper v. Princeton Univ. Bd. of Trustees*, 389 A.2d 465 (1978)"). Under that framework, a plaintiff must first establish a prima facie case of discrimination by showing that: "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802). If the plaintiff establishes a prima facie case, then "a presumption arises that more likely than not the [employer's] adverse conduct was based on the consideration of impermissible factors." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015). The burden then "shifts to the defendant 'to articulate some legitimate,

---

claims for relief, Alfaro-Flecha "repeats and realleges the allegations" from the prior paragraphs in the complaint. *Id.* ¶¶ 19, 25. Accordingly, the Court will treat the complaint as raising claims under the ADEA. *See Bembo v. County of Niagara*, No. 13-CV-413 (JTC), 2013 WL 5288169, at *2 (W.D.N.Y. Sept. 18, 2013) (treating the complaint as raising a section 1983 claim when the plaintiff "clearly state[d] in the introductory paragraph that his federal claims are brought pursuant to section 1983" and the claims for relief "twice incorporated the preceding paragraphs of the complaint").

4

nondiscriminatory reason'" for the adverse conduct. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802). Finally, "[i]f the employer articulates such a reason for its actions, the burden shifts back to the plaintiff to prove that the employer's reason 'was in fact pretext' for discrimination." *Vega*, 801 F.3d at 83 (quoting *McDonnell Douglas*, 411 U.S. at 804).

Although there was previously uncertainty in this circuit regarding the interplay between the *McDonnell Douglas* framework and the pleading requirements of *Iqbal* and *Twombly*, the Second Circuit recently provided some clarity on that point. In *Littlejohn v. City of New York*, the Court confirmed that "*Iqbal's* [pleading] requirement applies to Title VII complaints of employment discrimination." 795 F.3d 297, 310 (2d Cir. 2015). The court explained, however, that just as "the *McDonnell Douglas* temporary presumption reduces the facts a plaintiff would need to *show* to defeat a motion for summary judgment prior to the defendant's furnishing of a non-discriminatory motivation, that presumption also reduces the facts needed to be *pleaded* under *Iqbal*." *Id.* (emphasis in original). The Court then held that in order to state an employment discrimination claim within the *McDonnell Douglas* framework, the facts alleged in a plaintiff's complaint must plausibly support that "the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Id.* at 311. On this last point, the Court emphasized that in order to survive a motion to dismiss, a complaint "need only give plausible support to a *minimal inference* of discriminatory motivation." *Id.* (emphasis added).

### III.  DISCUSSION

ORC moved to dismiss each of Alfaro-Flecha's claims of employment discrimination on the grounds that she has failed to state a claim upon which relief can be granted. *See* Dkt. No. 5. In her response to ORC's opening brief, Alfaro-Flecha does not address ORC's arguments that the Court should dismiss her race discrimination claim and her hostile work environment claim

5

(to the extent she advances one). *See* Def. Br. 3-6, 12-13. Accordingly, the Court holds that she has abandoned these claims. *See, e.g., Brandon v. City of New York*, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (deeming the plaintiff's claims abandoned when he failed to raise any arguments opposing the defendants' motion to dismiss those claims).[4] Alfaro-Flecha does oppose ORC's motion to dismiss with respect to her age discrimination claim and her national origin discrimination claim. The Court concludes that Aflaro-Flecha has stated a claim for age discrimination, but her national origin discrimination claim must be dismissed.

### A.     Age Discrimination

Alfaro-Flecha contends that ORC unlawfully discriminated against her on the basis of her age. The parties do not dispute that the allegations pertaining to this claim satisfy the first three requirements outlined in *Littlejohn*—namely, that Alfaro-Flecha "is a member of a protected class, was qualified, [and] suffered an adverse employment action." 795 F.3d at 311. Alfaro-Flecha was 55 when she was hired and was therefore in the class of "[i]ndividuals at least 40 years of age" protected under the ADEA. *See* 29 U.S.C. § 631(a). She alleges that she "performed her job well and received a positive review." Compl. ¶ 5. And the fact that she was discharged clearly constitutes an adverse employment action. *See Anemone v. Metro. Transp. Auth.*, 410 F. Supp. 2d 255, 265 (S.D.N.Y. 2006) ("Adverse employment actions include discharge."). The only issue of contention for this claim is therefore whether Alfaro-Flecha alleges facts that "give plausible support to a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311. Although a close question, Alfaro-Flecha's age discrimination allegations are sufficient to clear this low bar.

Alfaro-Flecha puts forward two allegations, beyond her conclusory charge of an "anti-age" corporate culture at ORC, that purportedly support an inference of age-based discrimination. First, that the "Reduction Plan" under which Alfaro-Flecha lost her job resulted

---

[4] Although ORC does not specifically address Alfaro-Flecha's claim of retaliation, *see* Compl. ¶¶ 1, 3, Alfaro-Flecha has not alleged any facts that would support such a claim beyond the conclusory allegation that she was "unlawfully . . . retaliated against," *id.* ¶ 1. Accordingly, to the extent Alfaro-Flecha is pursuing a claim of retaliation, that claim is dismissed.

in the termination of younger employees "at a rate far less than the rate that older employees were terminated." Compl ¶ 6. Second, that ORC's Head of Human Resources indicated that "[i]f we do not get the number of employees we are hoping would agree to the early retirement plan, then they could face possible termination." *Id.* ¶ 13.

Standing alone, the claim that ORC disproportionately targeted older employees for termination would be conclusory. But in the affidavit attached to Alfaro-Flecha's charge of discrimination, which was filed with the EEOC, she makes specific allegations about the data she was provided by ORC regarding the ages of the employees who were terminated under the Reduction Plan. In particular, she claims that employees under 40 were terminated at a rate less than 60% of the rate at which employees over 40 were terminated, resulting in a standard deviation of 1.054. Charge Aff. ¶¶ 9, 10.[5]

ORC does not dispute the accuracy of these numbers, but it does dispute their implications. ORC notes that "[i]n the context of a reduction in force, a statistical disparity of 'less than two standard deviations . . . is generally insufficient to raise an inference of discrimination.'" Def. Br. 8 n.2 (alteration in original) (quoting *Gupta v. N.Y. City Sch. Const. Auth.*, 305 F. App'x 687, 689 (2d Cir. 2008)). But the summary order cited by ORC pertained to a district court's determination, *at the summary judgment stage*, that the plaintiff had failed to demonstrate a prima facie case of race or age discrimination. *See Gupta*, 305 F. App'x at 688-89. And the authority relied on in that summary order addressed the use of statistics (again, at the summary judgment stage) in cases where the plaintiff was attempting to prove discrimination under a *disparate impact* theory, rather than through a disparate treatment claim. *See Malave v. Potter*, 320 F.3d 321, 327 (2d Cir. 2003) (explaining that "although there is no one test that always answers the question whether a statistical disparity is sufficiently substantial to establish

---

[5] Alfaro-Flecha also makes clear that she believes the statistics supplied by ORC are inaccurate because ORC had discretion over which employees to include in the "Decisional Unit," i.e., the group of employees that were potentially eligible for termination under the Reduction Plan. *See* Charge Aff. ¶¶ 8-12. The Court need not consider the implications of Alfaro-Flecha's argument at this time, however, given its resolution of the motion to dismiss.

7

a prima facie case of disparate impact," courts generally consider "a statistically significant disparity of two standard deviations . . . sufficient to warrant an inference of discrimination" (internal quotation marks omitted)).

In evaluating disparate treatment claims at the summary judgment stage, courts can and do rely on statistics to support an inference of discrimination. *See Stratton v. Dep't for the Aging for City of N.Y.*, 132 F.3d 869, 877 (2d Cir. 1997) ("Although statistics play a much more substantial role in disparate impact cases, they are admissible to support a claim of discrimination even in a disparate treatment case involving a single plaintiff."); *see also Hudson v. Int'l Bus. Machines Corp.*, 620 F.2d 351, 355 (2d Cir. 1980) (finding "no error" in district court's determination that "statistical data alone would not establish a prima facie case" of race discrimination in a disparate treatment action, but affirming that such data could "be used to bolster a claim of race discrimination"). In other words, if this case were at the summary judgment stage, Alfaro-Flecha could use statistics about the ages of the employees who were terminated to bolster her claim of age discrimination, even though statistics alone could not make out a prima facie case. And although ORC could argue that the statistics here are not sufficiently significant to even *support* a prima facie case of age discrimination, none of the authority ORC has cited articulates such a rule. At best, ORC's cases support the proposition that a court should grant summary judgment to a defendant if the plaintiff's *only* evidence of discrimination is data showing a disparity in outcomes between the plaintiff's protected class and other employees of at least two standard deviations.

This case, however, is at the motion to dismiss stage. "Few courts have considered the use of statistics during the pleading stage of a disparate treatment claim, likely because a plaintiff is not required to provide evidence or prove any of her claims to survive a motion to dismiss." *Hussey v. N.Y. State Dep't of Law/Office of Atty. Gen.*, 933 F. Supp. 2d 399, 408 (E.D.N.Y. 2013); *cf. Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002) (emphasizing that the prima facie case required under *McDonnell Douglas* "is an evidentiary standard, not a pleading requirement"). In this posture, the Court need not decide whether the data that Alfaro-Flecha

8

point to are, standing on their own, sufficient to support a "minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311. At a minimum though, the data lend credence to Alfaro-Flecha's allegation that older employees were terminated at a higher rate than younger employees. That allegation contributes to the minimal inference required under *Littlejohn*.

Alfaro-Flecha's second allegation, concerning comments reportedly made by the Head of Human Resources, also supports such an inference. The complaint alleges that this individual warned that "[i]f we do not get the number of employees we are hoping would agree to the early retirement plan, then they could face possible termination." Compl. ¶ 13. As ORC notes, the mere *existence* of an early retirement program "is not evidence of age discrimination." *Fagan v. N.Y. State Elec. & Gas Corp.*, 186 F.3d 127, 133 (2d Cir. 1999). Here, however, there is more. The implication from the Human Resources statement is that the employees who are eligible for the early retirement program are the "they" who could face termination if not enough sign up. ORC contests this reading, arguing that the complaint does not allege that "the individuals who 'could face possible termination' were *limited* to those eligible for early retirement." Def. Br. 9 (emphasis added). True enough. But the statement contains no affirmative indication that the threat of termination applied to anyone other than those eligible for early retirement. Bearing in mind that, at this stage, the Court must "draw all reasonable inferences in favor of the plaintiff," *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007), it is fair to read the statement as a warning to the eligible employees that a failure to retire early could result in losing their jobs. ORC also argues that Alfaro-Flecha was not one of the employees who was eligible for the early retirement plan, as the plan was only available to those age 60 or above. Def. Br. 9. Even if true, this does not diminish the relevance of the Human Resources statement. Alfaro-Flecha does not allege that the statement was directed at her, but rather that it was evidence of ORC's hostility to older employees.

In sum, Alfaro-Flecha has alleged that ORC warned older employees that they could be terminated if not enough of them opted for an early retirement plan, and that ORC did in fact implement a "Reduction Plan" that disproportionately terminated older employees. This is

9

enough to raise "a *minimal* inference" that Alfaro-Flecha was discharged, pursuant to that Reduction Plan, on account of her age. *Littlejohn*, 795 F.3d at 311 (emphasis added). The Court therefore holds that Alfaro-Flecha's age discrimination claim survives the motion to dismiss.

### B. National Origin Discrimination

"To state a claim of national origin discrimination under Title VII, [a] [p]laintiff must plead facts showing that she suffered an 'adverse employment action' based on her national origin." *Baez v. New York*, 56 F. Supp. 3d 456, 466 (S.D.N.Y. 2014), *aff'd*, No. 14-3984, 2015 WL 6642971 (2d Cir. Nov. 2, 2015). Alfaro-Flecha contends that she was a victim of national origin discrimination because she was stripped of material responsibilities at ORC on the grounds that she was not of Chinese descent. ORC does not challenge that Alfaro-Flecha's allegations, if true, would be sufficient to support "a minimal inference of discriminatory motivation" on the basis of national origin. *Littlejohn*, 795 F.3d at 311. Instead, ORC argues that Alfaro-Flecha has failed to sufficiently plead that any negative repercussions she suffered on account of her national origin constitute "an adverse employment action." *See* Def. Br. 10. The Court agrees with ORC and concludes that the allegations in Alfaro-Flecha's complaint are insufficient to establish that any diminishment in her responsibilities constituted an adverse employment action under Title VII.

"A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment. *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). Such a change "must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Id.* (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993)). A materially adverse change can include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." *Id.* (quoting *Crady*, 993 F.2d at 136).

Alfaro-Flecha's complaint makes three allegations that address her responsibilities at ORC. First, she claims that her supervisor, Ms. Lee, gave "a number of assignments to

10

Plaintiff's subordinate, rather than to Plaintiff directly, despite the subordinate's notedly inferior experience, skills, and management style." Compl. ¶ 10. Second, she claims that Ms. Lee allegedly "hired at least one young independent contractor of Chinese origin to perform tasks that should have rightly been Plaintiff's." *Id.* And finally, she alleges that Ms. Lee "eliminated communications to Plaintiff regarding both the budgeting process and the accounting system implementation, preferring to rely on less-experienced individuals of Chinese origin." *Id.*

These allegations are insufficient for several reasons. First, even accepting all allegations in the complaint as true, Alfaro-Flecha never actually alleges that her responsibilities decreased. She claims that Ms. Lee gave assignments to subordinates and to an independent contractor, but she never claims that those were tasks she had *previously* been responsible for, and she never alleges that her overall level of responsibilities changed. Second, even if the Court reads her complaint as claiming that her responsibilities decreased, Alfaro-Flecha has made no allegations regarding her baseline responsibilities, such that the Court could assess whether any decrease was significant. Without any such allegations, there is no "factual content that allows the court to draw the reasonable inference" that Alfaro-Flecha experienced the kind of significant diminishment in her material responsibilities that constitutes an adverse employment action. *Iqbal*, 556 U.S. at 678. Third, Alfaro-Flecha provides almost no description of the tasks that were allegedly assigned to other employees, making it impossible to determine whether this was just "a minor alteration of plaintiff's job responsibilities" or "a materially adverse change in the terms and conditions of plaintiff's employment." *Mabry v. Neighborhood Def. Serv.*, 769 F. Supp. 2d 381, 393 (S.D.N.Y. 2011). The closest Alfaro-Flecha comes is her claim that Ms. Lee "eliminated communications" to her about the budgeting process and an accounting system implementation, but alleging that she was cut out of the loop on two issues does not plausibly allege a significant diminishment in material responsibilities. To be sure, it is *possible* to imagine a scenario in which communicating with Ms. Lee about those issues was one of Alfaro-Flecha's core responsibilities. But the complaint here does not allege that possibility. *See Iqbal*,

11

556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").

At bottom, even if the Court reads the complaint as alleging "several changes in [plaintiff's] work responsibilities, there is no allegation that those changes . . . significantly diminished her responsibilities." *Caskey v. City of Ontario*, 560 F. App'x 57, 59 (2d Cir. 2014) (internal quotation marks and citation omitted). Accordingly, Alfaro-Flecha has failed to adequately plead that she suffered an adverse employment action on account of her national origin. The Court therefore holds that her national origin discrimination claim must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, ORC's motion to dismiss is GRANTED with respect to all of Alfaro-Flecha's claims except her claim of age discrimination under the ADEA and the New Jersey LAD. With respect to that claim, the motion is DENIED.

An initial pretrial conference will be scheduled by separate order. This resolves Docket No. 5.


SO ORDERED.


Dated: Jan 5, 2016
New York, New York

_____
ALISON J. NATHAN
United States District Judge